# CHARLESTON.

HENRY *et als.* v. HAYMOND *et als.*

Submitted October 26, 1915. Decided November 16, 1915.

WILLS—*Codicil—Construction and Operation—Estate Devised.*

> A testator, having been twice married and having children by each wife, made a will in which he severally named the older set of children and stated that he had already given them all he intended them to have, and then, by a residuary clause, gave all the remainder of his estate, jointly, to his younger set of children, naming them, and provided that the portion of the girls should not be subject to the debts or control of their husbands, that the sons should not convey their portions for ten years, and added this further provision, that, "if any of them *dye* without heir their part of my estate to revert to their brothers and sisters." Two years later he made a codicil, saying it was added "as to (his) six
>
> 77 W. Va.

youngest children,'' by which he devised to each of them, severally, specific property, without any provision, qualification or limitation, except the property of his daughters, which he again provided should not be subject to their husbands' debts or control, and to which he added another residuary clause, giving the remainder of his estate to his younger set of children, likewise without condition or limitation, except that the shares of his daughters were not to be subject to the debts or control of their husbands.

   *Held*: That the codicil is a substitute for, and a complete revocation of the previous residuary devise, and gives each of the younger set of children an unqualified and unlimited estate in the property devised to them.

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Harrison County.

Suit by Matilda O. Henry and others against Susan M. Haymond and others. From a decree for defendants, plaintiffs appeal.

*Affirmed.*

*Smith & Jackson,* for appellants.

*Davis, Swartz & Templeman* and *John W. Davis,* for appellees.

WILLIAMS, JUDGE:

Claiming to be aggrieved by a decree of the circuit court of Harrison county entered on the 9th of October, 1914, dismissing their suit, brought for the purpose of compelling partition of certain lands devised by James Y. Hornor to his daughter Mary R. Hornor, who afterwards intermarried with Nathan Goff, Sr., and died without issue, plaintiffs have appealed.

They claim title, as children and grandchildren of brothers and sisters of the half blood, of Mary R. Goff, under the will of James Y. Hornor, deceased, a proper construction of which, they contend, gave Mary R. Goff a defeasible fee, which, upon her death without issue, passed to her brothers and sisters including those of the half blood.

There are numerous parties to the suit, and many of the defendants bear the same relationship to Mary R. Goff as plaintiffs. Two of the defendants, Almira Atkinson and Susan M. Haymond, are the only surviving children of testa-

tor; all the other parties are the descendants of his deceased children.

Two of the defendants, Susan M. Haymond and J. Carl Vance, demurred to the bill and the court sustained the demurrer; and, plaintiffs not desiring to amend, dismissed their bill.

Testator was twice married and had twelve children, six by each of his wives. His will bears date January 5, 1867. After directing the payment of his debts and funeral expenses and devising certain property to his wife, he then says he had already given to the six children by his first wife all he intended them to have, specifically naming them and devoting to each a separate clause in his will, except his daughter Eliza E. Bartlett who appears to have been dead, and to her children he gave ''land or money to the amount of one thousand dollars each,'' and except also the children of a deceased son, James F. Hornor, to whom he gave one thousand dollars out of his personal estate. He says he had given that deceased son his portion of lands in 1845. He then disposes of the remainder of his estate as follows:

''9th   I give the *ballance* of my estate to my six children to wit Mary, Amelia, Frederick, Susan, Almira and James the portion of the four girls to be in nowise subject to the debts or liabilities of their husbands nor the portions of my sons not to be *convayable* by them for ten years and if any of them *dye* without heir their part of my estate to revert to their brothers and sisters.''

By the tenth and last clause of his will he appoints his wife executrix. On the 1st of April, 1869, he added the following codicil, viz.:

''11th   Since writing the foregoing I here add a codicil as to my six youngest children to wit:

''I give the *ballance* of my land at Lumberport except the one hundred acres given to my wife to my sons Frederick M. and James D. Hornor.

''12th   I give to my daughter Mary M. R. Hornor the house and lot in the town of Clarksburg where I now live and what land is on the east side of the Spring run to the creek she to remain with us till my wife's death to be in nowise subject to her husband's debts or *controle.*

"13th   I give to the brick house and lot where she lives and
and one acre of land on the cole bank lot laid of in the North
East corner of said lot to my daughter Amelia S. Hornor to
be in nowise subject to her husbands debts or controle.

"14th   I give to my daughter Susan Hornor my two houses
and lots adjoining M. D. Gedings and running to the creek.

"15th   I give to my daughter Almira Hornor my white
house and all the land south of the ralerode up to the garden
and to a drain with said drain by the stable to the dividing
line of the Cherry Camp place all the land west of said drain
that drain to be the line furnishing water for both places to
be in nowise subject to her husbands debts or controle.

"16th   I leave the residue of my estate both real and
pursonal to be equally divided between my six youngest
children to them and their children or heirs in nowise to be
subject to their husbands debts or controle."

On the 17th of October, 1871, he added another codicil, by
which he expressly revoked the gift made to the two children
of Eliza E. Bartlett, stating that he had, since making his
will, granted to each of them certain lands in lieu of the pro-
vision he had made for them in his will. This second codicil,
however, has no bearing upon the questions here presented.

The controversy arises over a construction of the ninth
clause of the will and the twelfth clause of the codicil.
Counsel for appellants contend that the concluding provision
of the ninth clause, "and if any of them dye without heir
their part of my estate to revert to their brothers and sisters,"
should be read in connection with, and as a part of the codicil,
and that, when thus considered, it modifies clause twelve and
cuts down the fee simple estate of Mary R. Hornor, which
would be created by that clause, standing alone, to a defeasible
fee, she having died without issue. They further contend
that, by the word "heir" in the ninth clause, the testator
evidently meant a child, or issue; and that the terms,
"brothers and sisters," therein used, include those of the half
blood. The last two points of contention, counsel for appellees
admit, and we think properly so. It is, therefore, needless to
cite authorities in support of them. But they controvert the
first proposition, and insist that the other two, admitted to be
correct, do not apply, for the reason, they say, clause nine of

the will is entirely abrogated by the codicil, which testator clearly intended as a substitute for clause nine. Various cardinal rules, governing the construction of wills, are cited by counsel for appellants to support their several propositions, with none of which are we disposed to take issue. The question is, are they applicable? All rules for the construction of wills are adopted for the purpose of aiding the courts in harmonizing, if possible, apparently conflicting or repugnant provisions, and in interpreting the meaning of doubtful provisions, thereby determining, as near as may be, the true intent of the testator. *Couch* v. *Eastham*, 29 W. Va. 784; *Same v. Same,* 69 W. Va. 710; *Cresap* v. *Cresap,* 34 W. Va. 310. The testator's expressed intent is his will, and, when clearly expressed, there is no occasion to resort to rules of interpretation. But the codicil being so clearly repugnant to certain provisions in clause nine of the will, it may be necessary to invoke some of the rules in order to determine whether or not testator intended to abrogate the whole of that clause, or only a part of it.

If the codicil is a substitute for clause nine, it follows that it abrogates it as completely as if the testator had expressly revoked it. Where some provision in a will is repugnant to a codicil, it is a cardinal rule of construction that the latter must prevail, it being the last expression of testator's will. *Houser* v. *Ruffner, Adm'r.,* 18 W. Va. 244; 1 Jarman on Wills, 174, 177; 2 Min. Inst., (2nd ed.), 954. A subsequent inconsistent disposition of property, previously devised, is an implied revocation *pro tanto.* 30 A. & E. E. L., (2nd ed.), 664; 1 Jarman on Wills, 175. When repugnancy exists no words of revocation are necessary. 6 A. & E. E. L., (2nd ed.), 186; 40 Cyc. 1175; *Dawson* v. *Dawson's Admr.,* 10 Leigh 602. These rules apply only in case of irreconcilable conflict between the will and codicil. They should be read together and effect given to both, if possible. But where it is impossible to give any effect to a previous provision and, at the same time, carry out the intention of the testator, clearly expressed in the codicil, such previous inconsistent provision must yield entirely to the codicil. The circumstances surrounding the testator at the time of making his will may be considered in trying to arrive at his intention. Testator had been twice married and had

two sets of children. He expressly says he had already given to his older set all the property he intended to give them, and by the ninth clause of his will he gives all the remainder of his estate, jointly, to the six children of his second marriage, naming them. That clause can have no reference whatever to the first set of children. The restriction he there places upon his sons' *jus disponendi* for a period of ten years, has application only to the two sons of his second marriage. Likewise, the provision that, "if any of them *dye* without heir their part of my estate to revert to their brothers and sisters," applies only to the children named in that clause. The pronouns, "them" and "their", relate only to the children named in that clause. The testator was there dealing with the children of his second marriage, as a distinct class, and, when he came to make his codicil, he confined it to the same class of persons and to the same subject matter with which he had previously dealt in clause nine. The codicil deals with no other persons or property, and makes a disposition wholly inconsistent with that previously made by clause nine. Testator expressly says he makes the codicil, "as to (his) six children." He then proceeds to devise specific property to each of them, providing, in respect to the property given to each of his daughters, except Susan, that it should be free from the control of their respective husbands; and, by the last clause of the codicil, he gives all the residuum of his estate, both real and personal, to be equally divided amongst his "six youngest children."

The codicil differs from clause nine of the will in the following respects: (1) it makes separate devises of specific property, instead of undivided shares in a joint devise; (2) it contains no restriction upon the sons' power of disposition; and (3) it makes no provision for a limitation over in case of the death of a devisee without issue. These are vital and radical changes indicating, as we think, a clear purpose by the testator to ignore any provision which he had previously made in clause nine and to substitute for it a wholly different disposition. This view is further supported by the addition to the codicil of a residuary clause and omitting from it the limitation placed upon the estates given by clause nine. That clause is itself a complete residuary devise, and would answer every purpose the testator could have had in mind, if he had

not desired to avoid the limitations and restrictions therein contained. Both clauses dispose of the residuum of testator's estate to the same class of persons and in the same proportion, the difference being that the latter residuary clause does so without any of the limitations and restrictions found in the first one. The only provision found in both is, that the property of the daughters shall not be subject to the control of their husbands; and this is further evidence, we think, of testator's purpose to wholly. supplant clause nine by the codicil. If that clause was still to be read as a part of testator's will, it was not necessary to repeat that provision in the codicil.

By his codicil testator gave to each one of his six younger children as great an estate as he himself had, presumably a fee, and added thereto no provision cutting down that estate in case the devisees should die without issue. It is a clearly expressed devise of an unlimited estate, and some other provision, of doubtful application, can not be read for the purpose of cutting it down. *Bell's Admr.* v. *Humphreys,* 8 W. Va. 1, (Syl, pt. 11).

This case has been carefully briefed by able counsel representing the contending parties, and numerous authorities are cited in support of their respective contentions. But, inasmuch as no particular form is necessary, or technical words required, in making wills, scarcely any two are found to be alike. They are as varied as the different forms of expression employed by different persons, and hence the interpretation of one seldom serves as a complete guide for the interpretation of another. Many of the cases, which counsel have selected and digested with so much care, we find not to be of much assistance to us in this case, but independent of the authorities cited, and looking to the language of James Y. Hornor's will and the circumstances surrounding him when he made it, we have no doubt that his purpose was, in making his first codicil, to substitute it for clause nine of his will, and that he thereby abrogated every condition and provision therein, which he did not repeat or reexecute by the codicil.

Mary R. Goff having acquired a fee simple estate, and having disposed of it by will, as shown by plaintiff's bill and a copy of said will exhibited therewith, it follows that plain-

tiffs' bill was properly dismissed, and the decree will be affirmed.

*Affirmed.*