216 S.E.2d 769 (1975)
The FARMERS AND MERCHANTS BANK OF KEYSER, West Virginia, a corporation, Executor of the Estate of Mary Pauline Gelwicks, Deceased,
v.
The FARMERS AND MERCHANTS BANK OF KEYSER, West Virginia, a corporation, as Trustee of the First United Methodist Church Foundation, et al.
No. 13513.
Supreme Court of Appeals of West Virginia.
July 22, 1975.
*770 Anthony G. Halkias, Charleston, Gary Athey, Keyser, for appellants.
James, Wise, Robinson & Magnuson, Robert E. Magnuson and Joseph S. Beeson, Charleston, Charles W. Smith, Keyser, for appellee.
SPROUSE, Justice:
This is an appeal from the judgment of the Circuit Court of Mineral County in a civil action to construe a will. The judgment interpolated into the will a clause, containing the amount of a specific bequest, which had been omitted during its preparation. The action was instituted by the Farmers and Merchants Bank of Keyser, Executor of the Estate of Mary Pauline Gelwicks, against Jess C. Little, Frances K. Vossler, Charles E. Vossler, Kathryn B. Vossler, Virginia Vossler Lyons, and the Farmers and Merchants Bank in its fiduciary capacities as trustee for the First United Methodist Church Foundation, trustee for the Methodist Children's Home at Burlington, and as trustee for Frances K. Vossler.
Mary Pauline Gelwicks died on June 25, 1971. The paragraph, designated "THIRD" in her will, provided:
"I hereby direct my Executor, hereinafter named and appointed, to compute an amount of money which, when added to the aggregate amount of all gifts made by me during my lifetime to the Farmers and Merchants Bank of Keyser, West Virginia, a corporation, as Trustee of the First Methodist Church Foundation, to be held, managed, invested, re-invested, and the income used and applied to the payment of the general operating expenses of the First Methodist Church of Keyser, West Virginia * *."
Following the first bequest, the testatrix made certain other bequests and then devised the remainder of her estate in equal shares to Jess C. Little; the Bank as trustee for Frances K. Vossler for life and then to Charles E. Vossler, Kathryn B. Vossler, and Virginia Vossler Lyons; and the Bank as trustee for the Methodist Children's Home at Burlington.
The appellants maintained in the trial court that the bequest to the Foundation was so vague and ambiguous that it was impossible to give it a meaningful interpretation, *771 thereby rendering the clause inoperative and void. The trial court, however, on its own motion ruled and ordered that Joseph A. Blundon, the attorney who prepared the will, appear and testify concerning the alleged omission of language in the third paragraph.
At a subsequent hearing, Blundon testified, over objection of counsel for the residuary legatees, that he prepared the will in question from an interlinear copy of a prior will. Blundon stated:
"A. * * * I notice that apparently two lines were omitted by the typist from paragraph third of the will, which begins on Page one and continues on Page two. In recalling what Miss Gelwicks' instructions to me were and her dispositive intent, the omission occurs after the comma, the first comma in the first line at the top of Page two, and I do remember what was omitted from that sentence.
* * * * * *
"A. It was Miss Gelwick's intention to direct her executor to compute an amount, which, when added to the sum of the gifts which she had made during her lifetime to the Methodist Church Foundation equal the sum of $35,000. And I remember quite clearly that this will was prepared by me by reviving and making interlineations in my office file copy of a prior will that I had prepared for her. And the language to carry out that intent was inserted by me in the first sentence of Paragraph third of her will.
* * * * * *
"A. The direction to the executor appears from the existing language, pertinently beginning Paragraph third, it says, `I hereby direct my executor hereinafter named and appointed to compute an amount of money which when added to the aggregate amount of all gifts made by me during my lifetime to the Farmers and Merchants Bank of Keyser, West Virginia, a corporation, as Trustee of the First Methodist Church Foundation.' At that point, the language left out was, an amount which would cause this bequest to total the sum of $35,000, * * *." (Italics supplied.)
At the direction of the testatrix, Blundon had prepared the trust agreement creating the Methodist Church Foundation. During her lifetime, the testatrix contributed $13,510.75. Blundon testified that she was an active participant in her church.
Despite the fact that Miss Gelwicks read the will and initialed each page, she made no comment about it at the time of execution. Blundon testified that the third provision of the new will was essentially the same language used in the prior will, although the former will "to the best of [his] recollection" provided for "a set amount and did not provide for any deduction for gifts made during her lifetime."
Based upon this parol evidence, the circuit court interpolated into the will the clause testified to by Blundon as having been omitted. Having interpolated the language in this manner, paragraph THIRD read:
"I hereby direct my Executor, hereinafter named and appointed, to compute an amount of money which, when added to the aggregate amount of all gifts made by me during my lifetime to the Farmers and Merchants Bank of Keyser, West Virginia, a corporation, as Trustee of the First Methodist Church Foundation, an amount which would cause this bequest to total the sum of $35,000, * * *." (Omitted language italicized.)
By order, the court instructed the executor to pay the bank, as trustee for the foundation, $35,000, less $13,510.75 given to said foundation during the lifetime of said Mary Pauline Gelwicks, or a balance of $21,489.25 * * *."
*772 A motion for a new trial and a motion to alter or amend the findings and judgment filed by counsel for two of the three groups of residuary legatees were subsequently overruled by the trial court.
The paramount principle in construing or giving effect to a will is that the intention of the testator prevails, unless it is contrary to some positive rule of law or principle of public policy. Goetz v. Old National Bank of Martinsburg, 140 W.Va. 422, 84 S.E.2d 759; 4 Page, Wills, § 30.4, page 17.
In Bell's Admr. v. Humphrey, 8 W.Va. 1, this Court stated that the intention of the testator must be judged exclusively by the words of the instrument. Legal presumptions and rules of construction may be resorted to only when the language of the will affords no satisfactory clue to the real intention of the testator. Neal v. Hamilton Company, 70 W.Va. 250, 73 S.E. 971.
In the case sub judice, the intention to make a bequest is clear, but the amount of the bequest is not just ambiguously stated  it is nonexistent. No clue as to the amount intended can be gleaned from an examination of the will itself. The question then becomes to what extent may extrinsic evidence, including parol testimony, be considered in ascertaining that intent.
The general rule is: (1) Where the will is unambiguous, extrinsic evidence is not admissible to show the intention of the testator or to give the language a different meaning; (2) such evidence is not admissible to vary, contradict, or add to the terms of a will or to show a different intention on the part of the testator; but (3) evidence of extrinsic circumstances is admissible to explain or apply an ambiguous will. 57 Am. Jur., Wills, § 1040, pages 674-75.
The admissibility of extrinsic evidence in this latter category is often dependent upon the nature of the ambiguity, i. e., latent or patent. 57 Am.Jur., Wills, § 1042, page 676.
"A latent ambiguity is one that is not apparent upon the face of the instrument alone and that is discovered when it is sought to identify the property, the beneficiaries, etc. * * *
"A patent ambiguity is defined as one which is apparent upon the face of the instrument, as where in wills the same tract is disposed of in different clauses to different individuals. * * *" 4 Page, Wills, Section 32.7, page 255.
In Hobbs v. Brenneman, 94 W.Va. 320, 326-27, 118 S.E. 546, 549, the Court acknowledged this distinction:
"* * * Parol evidence to show the intention of the testator in the use and meaning of the words used is admissible only in cases where there is a latent ambiguity. A latent ambiguity is: `[t]hat which seemeth certain and without ambiguity for anything that appeareth upon the face of the deed or instrument, but there is some collateral matter out of the deed that breedeth the ambiguity.' Bacon, Maxims, 23; Hawkins v. Garland's Adm'r, 76 Va. 149; Paxton v. Oil Co., 80 W.Va. 187, 94 S.E. 472. `A patent ambiguity is one apparent on the face of the will. If the ambiguity occurs in the wording of a will, producing a palpable uncertainty on the face of the instrument, extrinsic evidence cannot remove the difficulty without putting new words in the mouth of the testator, and, in effect, making a new will for him. In such case the only aid which can be brought to the construction of the bequest is by comparing it with other parts of the will, and thus ascertaining the true meaning and giving effect to the whole will, and every part thereof.' Senger v. Senger, 81 Va. 687; 2 Minor Inst. 1062; Couch (sic) v. Eastman, 29 W.Va. 784, 3 S.E. 23."
The Court reaffirmed these principles as late as 1957 by the decision in Weiss v. Soto, 142 W.Va. 783, 98 S.E.2d 727.
While it would be inaccurate to state that extrinsic evidence may never be *773 admitted in explanation of a mistake or omission in a will, it is permitted only to the extent that the office and effect of the evidence are to interpret and apply language actually embodied in the will. It may not be used to vary or contradict such language, or to interpolate therein a provision, word, or name of which there is no semblance in the instrument. 57 Am.Jur., Wills, § 1045, pages 679-80. This Court has repeatedly held that it will not construe a will based on speculation and conjecture. Harris v. Eskridge, 124 W.Va. 283, 20 S.E.2d 465.
"* * * The court may not, however, make or rewrite a will under the guise of construction, * * *, but is confined to ascertaining the testator's intent from the four corners of the will, * * * and ordinarily it has no authority freely to interpolate words in the will and remedy apparent omissions. * * *
"* * * The mere omission of words by the testator from his will through oversight on his part, or due to the mistake of a copyist, cannot be remedied by the court in the absence of an intention apparent on the face of the will as written." 95 C.J.S. Wills § 609, pages 810-12.
Extrinsic evidence may not, therefore, be admitted to fill up a total blank, or to determine the person or property intended by the testator, where there is a total failure to designate any. 57 Am.Jur., Wills, § 1047, page 681. See also Lee v. Gaylord, 239 Mich. 274, 214 N.W. 104; Neal v. Hamilton, supra; Graham v. Graham, 23 W.Va. 36.
This result obtains whether the mistake or omission is one of the testator or of a scrivener. "It has also been held or recognized that a draftsman's mistake consisting of an inadvertent omission of words from the will, such as the amount of a legacy, a residuary clause, devises or bequests, the name of a legatee or devisee, is to be regarded as a mistake of the testator and binding upon him." Annot., 90 A.L. R.2d 924, 939. See also Engelthaler v. Engelthaler, 196 Ill. 230, 63 N.E. 669; De Benedictis v. De Benedictis, 21 N.J.Super. 479, 91 A.2d 368; MacDonald v. Fagan, 118 S.C. 510, 111 S.E. 793.
The omission of the amount of the bequest in the Gelwicks will cannot under any theory be supplied by parol evidence. To do so, we would be required to rewrite the will. While it may be unfortunate in particular cases that intention of testators cannot be ascertained by broader evidentiary inquiries, we adhere to the policy of preserving the integrity of wills. The trial court was, therefore, clearly in error in permitting the testimony of the will's scrivener and interpolating into the will the clause supplied by this testimony.
For the reason stated, the judgment of the Circuit Court of Mineral County is reversed.
Reversed.