351 S.E.2d 75

**BANK OF RALEIGH, Trustee of the Eva Teter Hammer Trust, and West Virginia Board of Regents, a Corporation, and the University of Health Sciences, a Corporation, Appellees,**

v.

**Alta M. THOMPSON, Administratrix of the Estate of Macie Teter Williams, Alice Jean Enke, Anna Dean Williams, Barbara Enke, Elizabeth Enke Becera and All Unborn Children of Alice Jean Enke and Anna Dean Williams, Appellants.**

No. 16889.

Supreme Court of Appeals of West Virginia.

Nov. 28, 1986.

Robert B. Sayre, Sayre & Sayre, Beckley, for appellants.

W.H. File, Jr., File, Payne, Scherer & Brown, Beckley, for Bank of Raleigh.

W.A. Thornhill, III, Beckley, for University of Health Sciences.

Charlie Brown, Atty. Gen., for Board of Regents.

McHUGH, Justice:

This case is before this Court upon appeal of a declaratory judgment concerning the interpretation of a will and its corresponding codicil. It arises from an order entered on April 3, 1985, by the Circuit Court of Raleigh County in which the court ruled that the testamentary instruments of Dr. Eva Teter Hammer created a life estate in the trust income of the "Eva Teter Hammer Trust" for her sister, Macie Teter Williams, and upon her death, for the testatrix's nieces, the daughters of Macie Teter Williams, Alice Jean Enke and Anna Dean Williams. It further ordered that upon the death of the testatrix's nieces, the trust would terminate and the corpus would be paid to the University of Health Sciences, subject to a $1500 bequest which would annually be paid to the West Virginia School of Osteopathic Medicine toward a scholarship for worthy students. This Court has before it the petition for appeal, the response to the petition by the University of Health Sciences, all matters of record and briefs.

The appellants are Alta Thompson, the administratrix of Macie Teter Williams' estate, and the daughters and grandchildren of Macie Teter Williams.

The appellees are the Bank of Raleigh, trustee of the "Eva Teter Hammer Trust," the West Virginia Board of Regents and the University of Health Sciences.[1]

I

The testatrix, Dr. Eva Teter Hammer, died on July 30, 1975. Dr. Hammer was unmarried and without issue at the time of her death. Her sole legal heir and next of kin was her sister, Macie Teter Williams. Upon her death, Dr. Hammer left two testamentary instruments: a validly executed will and a validly executed codicil.

On October 29, 1969, Dr. Hammer executed her will which contained a testamentary trust wherein she provided income for life for her sister, Macie Teter Williams. Upon the death of her sister, the trust income was to be paid to the testatrix's nieces, Alice Jean Enke and Anna Dean Williams, or to the survivors of them.

Upon the death of Dr. Hammer's nieces, the will provided for the following residual distribution:

> Upon the death of the last of my aforesaid nieces, the 'Eva Teter Hammer Trust' shall terminate and the entire corpus thereof and all undistributed income accrued shall be delivered over by my said Trustee unto the Kansas City College of Osteopathy located in Kansas City, Missouri, to be used by such educational institution for 'Eva Teter Hammer Scholarship' grants to worthy stu-

1. The University of Health Sciences was previously called the Kansas City College of Osteopathy and is referred to by the testatrix in her codicil as "Kansas City College." The trial judge below held that the "Kansas City College" mentioned in the codicil was the same as the University of Health Sciences. For purposes of our discussion, the institution will be referred to as the University of Health Sciences, unless we are focusing on the specific language of the testatrix.

dents of its choosing in such amounts and at such times as the governing board of the college deem proper.

Subsequent to the execution of the will, the West Virginia School of Osteopathic Medicine [2] opened in October of 1974, and Dr. Hammer executed the following handwritten codicil on November 23, 1974:

Nov–23.–74.

In my will made by me written by George P Sovick Jr Attorney at Law Charleston W Va. Three changes will be made– [3]

. . . .

(2) -Money that was to be given as stated in the will to the Kansas City College—shall be given to West Virginia Osteopath Shall be the amount of $1500.00 One Thousand Five Hundred each year to the college to be used in a scholarship for a worthy student.

(3) Money is to be willed to my sister Macie Teter Williams Should she proceed me—will go to my nieces as stated in my will—and after *either either* death to their children *children*

Eva Teter Hammer DO

Macie Teter Williams, one of the beneficiaries named above, died on October 12, 1982, leaving two children, Alice Jean Enke and Anna Dean Williams.

The appellees here, the plaintiffs below, sought a declaratory judgment in the Circuit Court of Raleigh County in order to construe several clauses of the testatrix's will and her subsequent codicil. By order of April 3, 1985, the trial court determined that the testamentary instruments provided income for life for Alice Jean Enke and Anna Dean Williams. Upon the death of the beneficiaries for life, the court ruled that the trust should terminate and its corpus be paid to the University of Health Sciences, conditioned on a provision being made for a $1500 annual scholarship to be paid to the West Virginia School of Osteo-

pathic Medicine. It is from this order that the appellants seek relief in this Court.

II

The issue now before us is whether the provisions of the codicil operate to alter the initial bequest of the testatrix so as to entitle Macie Teter Williams to the corpus of the trust, less a sum sufficient for a $1500 annual scholarship to the West Virginia School of Osteopathic Medicine, as opposed to income for life for Macie Teter Williams and after her death, income for life for the nieces of the testatrix. We hold that it does.

The appellants contend that by execution of the second provision of the codicil, "Money that was to be given . . . to . . . Kansas City College . . . shall be given to West Virginia Osteopath Shall be the amount of $1,500.00 . . . each year to the college to be used in a scholarship for a worthy student[,]" the initial bequest to the University of Health Sciences was changed to the West Virginia School of Osteopathic Medicine and that this bequest was converted from a remainder of the corpus of the trust to a sum sufficient to generate $1500 annually to the West Virginia school for scholarship purposes. Further, the appellants maintain that the third provision of the codicil, "Money is to be willed to my sister Macie Teter Williams . . .[,]" subject to the above bequest, operates to bequeath the corpus of the "Eva Teter Hammer Trust" to her sister, Macie Teter Williams.

Conversely, the appellees stress that the initial bequest of the corpus remains with the University of Health Sciences, subject to what they contend is an annual $1500 residuary bequest to the West Virginia College of Osteopathic Medicine for scholarship purposes.

Because of the infinite variety of words and combinations of words used in wills, precise precedents are seldom found in

---

**2.** The testatrix, in her codicil, refers to the West Virginia School of Osteopathic Medicine as "West Virginia Osteopath." Again, for purposes of our discussion, we will refer to the institution as the West Virginia School of Osteopathic Medicine. *See supra* note 1.

**3.** The first of these changes is not disputed by the parties and not pertinent to the resolution of the issue before the Court; therefore, it will not be discussed herein.

cases resolving testamentary dispositions. *Goetz v. Old National Bank*, 140 W.Va. 422, 429, 84 S.E.2d 759, 766 (1954). However, certain general principles have been established which are applicable to all such cases. *Id.*

"The cardinal rule in the construction of testamentary instruments is that a court should give effect to the intent of the testator." Syl. pt. 1, *Reedy v. Propst*, 169 W.Va. 473, 288 S.E.2d 526 (1982). *See also Wheeling Dollar Savings & Trust Co. v. Hanes*, 160 W.Va. 711, 718, 237 S.E.2d 499, 503 (1977); syl. pt. 1, *Farmers & Merchants Bank v. Farmers & Merchants Bank*, 158 W.Va. 1012, 216 S.E.2d 769 (1975). This Court has further strengthened that principle by repeatedly refusing to construe a will based on speculation and conjecture. *Farmers & Merchants Bank v. Farmers & Merchants Bank*, 158 W.Va. 1012, 1018, 216 S.E.2d 769, 773 (1975); *Harris v. Eskridge*, 124 W.Va. 283, 287, 20 S.E.2d 465, 467 (1942).

This Court has held that the intention of the testator must be judged exclusively by the words of the will, with legal presumptions and rules of construction resorted to only when the language of the testamentary instrument affords no satisfactory clue to the real intention of the testator. *Farmers & Merchants Bank v. Farmers & Merchants Bank*, 158 W.Va. 1012, 1016, 216 S.E.2d 769, 772 (1975); *see also Bell's Admr. v. Humphrey*, 8 W.Va. 1, 18 (1874); *Neal v. Hamilton Co.*, 70 W.Va. 250, 255, 73 S.E. 971, 973 (1912).

In the case before us, we find the testatrix's language most helpful in ascertaining her intent. However, in doing so, we must give effect to the true meaning of the testator's words rather than conjectural significance of such language. *Fisher v. West Virginia Gas Corp.*, 127 W.Va. 645, 650, 34 S.E.2d 123, 126 (1945).

The testatrix's use of the past tense in the initial phrase ("Money that was to be"), when coupled with her subsequent use of the present tense ("shall be") evidences a clear indication of a change in her intention. As between the two institutions, the testatrix, by the execution of her codicil, evidenced an intent to bequeath a portion of that which was initially willed to the University of Health Sciences to the West Virginia School of Osteopathic Medicine, which was not in existence when she executed the first testamentary instrument.

The language of the testatrix concerning the amount of the bequest is unambiguous. The phrase "shall be the amount of $1500.00 each year to the college to be used in a scholarship to a worthy student" demonstrates the testatrix's intention to substantially qualify the amount of the original bequest, as well as its recipient. Originally, the entire remainder in the corpus of the trust was going to the University of Health Sciences for worthy students "in such amounts and at such times as the governing board of the college deem proper." The testatrix instead, by execution of the codicil, effectively reduced the gift to a sum sufficient to generate $1500 annually to the West Virginia School of Osteopathic Medicine for worthy students.

### III

The appellants also argue that the third provision of the codicil clearly entitles the testatrix's sister to the entire corpus of the trust. Appellants maintain that where a provision in a will and codicil are inconsistent, the codicil must prevail since it is the latest expression of the testatrix's intent. *Henry v. Haymond*, 77 W.Va. 173, 177, 87 S.E. 78, 79 (1915). Provisions of the will which are inconsistent with those of the codicil may be declared revoked by implication. 79 Am.Jur.2d *Wills* § 680 (1975).

Appellees, on the other hand, assert that the appellants have ignored a qualification of these rules, since they need only apply in case of an irreconcilable conflict between the will and the codicil. *Henry v. Haymond*, 77 W.Va. at 177, 87 S.E. at 79. They stress that provisions of both testamentary instruments should be read together and effect given to both, if possible, thus causing the corpus of the trust to go to the University of Health Sciences, subject to the $1500 scholarship provision for the West Virginia School of Osteopathic Medicine.

In the case before us, the intention of the testatrix is clearly expressed by the language of the codicil, and we need not resort to legal presumptions and rules of construction when such is the case. *Farmers & Merchants Bank v. Farmers & Merchants Bank, supra.* The codicil is written in the testatrix's own language and although it is not as technically proficient as the language her attorney used in drafting her will, it is dispositive in determining her true intent.

The making of the codicil itself implies some purpose on the part of the testator respecting her estate or previous dispositions. *Hope Natural Gas Co. v. Shriver,* 75 W.Va. 401, 412, 83 S.E. 1011, 1016 (1914). Here, that purpose is to alter the original dispositions made in the will. The testatrix has said as much in the preface of her codicil where she writes "[c]hanges will be made...." The testatrix, by execution of this codicil purposefully drafted this instrument to alter certain aspects of her will.

Consistent with our earlier interpretation of the codicil's second provision, the testatrix's use of the phrase "Money is to be willed to my sister ..." evidences an intent that the *"Money that was to be* given ... to ... Kansas City College ..." should properly belong to Macie Teter Williams. (emphasis added).

The words used by the testatrix have a clear meaning and are used consistently throughout the codicil. The appellee contends that the word "money," as used in the codicil is synonymous with the word "income." The appellee urges this contention so that pertinent provisions of the will and codicil may be reconciled. When one interprets "money" to mean "income," effect may be given to the initial bequest of the trust corpus to the University of Health Sciences, while providing for an annual $1500 scholarship to the West Virginia School of Osteopathic Medicine from the trust income as well as income for life for Macie Teter Williams. However, in her will, the testatrix clearly referred to the word "income" when it was her intent to do so. Thus, we cannot speculate that it was

her intention that the word "money" should mean "income," since for purposes of construing a will, the testatrix's intention must be ascertained by giving such words their true meaning rather than their suppositious significance. *Fisher v. West Virginia Gas Corp.,* 127 W.Va. 645, 650, 34 S.E.2d 123, 126 (1945).

The last phrase of the codicil, "Should she [Macie Teter Williams] proceed me—will go to my nieces as stated in my will ..." is, of course, not of significance inasmuch as Macie Teter Williams did not predecease the testatrix.

We hold, therefore, that although the testatrix provided in the will for the bequest of the corpus of the trust to the Kansas City College of Osteopathy, now the University of Health Sciences, upon the death of the life estate beneficiaries, language used by the testatrix in a codicil to that will, "Money that was to be given as stated in the will to the Kansas City College ... shall be given to West Virginia Osteopath Shall be the amount of $1,500.00 ... each year to the college to be used in a scholarship for a worthy student[,]" and subsequent use of the language, "Money is to be willed to my sister Macie Teter Williams ..." evidences the testatrix's intent to alter the initial bequest in her will by bequeathing a sum sufficient to generate $1500 annually to the West Virginia School of Osteopathic Medicine for scholarship purposes while providing a residuary bequest of the corpus of the trust to the named beneficiary, Macie Teter Williams.

Even if we were unable to ascertain the testatrix's intention as to the disposition of her estate in this case, the codicil still effectively provides for a residuary bequest of the corpus of the trust to Macie Teter Williams. It is a cardinal rule of construction, where there is an irreconcilable conflict between a will and a codicil, that the latter must prevail over the former. *Henry v. Haymond, supra.* In the case before us, the will provides a residuary bequest of the corpus of the trust to the University of Health Sciences, while the codicil provides the same to the testatrix's sister. Clearly, the provision of the codicil is repugnant to the bequest in the

will; however, this was by the testatrix's design and must be given its proper effect. *See Hope Natural Gas Co. v. Shriver*, 75 W.Va. 401, 415, 83 S.E. 1011, 1017 (1914) (Williams, J., dissenting).

By execution of her codicil dated November 23, 1974, the testatrix effectively converted the initial bequest in her will from a remainder in the corpus of the "Eva Teter Hammer Trust" to the University of Health Sciences to a sum sufficient to generate $1500 annually to the West Virginia School of Osteopathic Medicine to be used for a scholarship for a worthy student.

Accordingly, subject to the above bequest, and in light of the fact that Macie Teter Williams did not predecease the testatrix, the entire remainder in the corpus of the "Eva Teter Hammer Trust" was left to Macie Teter Williams.

For all of the foregoing reasons, the judgment of the Circuit Court of Raleigh County is reversed.

Reversed.