472 S.E.2d 678

196 W.Va. 341

J. Gregory FOSTER, Administrator C.T.A. of the Estate of Evelyn N. Foster, Plaintiff Below, Appellee,

v.

J. Gregory FOSTER, Devisee Under the Last Will and Testament of Evelyn N. Foster, Defendant Below, Appellee,

and

Judy Monk, Devisee Under the Last Will and Testament of Evelyn N. Foster, Defendant Below, Appellant.

No. 23054.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 1996.

Decided Feb. 14, 1996.

Mark E. Wills, Wills & Sadler, Princeton, for Appellee J. Gregory Foster, Devisee.

Randall L. Veneri, Anthony R. Veneri, Veneri & Veneri, Princeton, for Appellant Judy Monk.

## PER CURIAM:

Judy Monk, a defendant below and the appellant herein, appeals from an order of the Circuit Court of Mercer County which denied her motion for reconsideration. On February 24, 1995, the circuit court declared the holographic will of Evelyn Foster, dated September 12, 1991, ambiguous and thereby invalid and further determined that Ms. Foster's estate should be distributed according to the laws of intestacy between her two children. After reviewing the record, we agree with Ms. Monk's assertion that the will should not be void for uncertainty. A fair reading of the will reveals Ms. Foster's intention that her daughter, Ms. Monk, receive the farm, house, and contents of the house. Under the terms of the will, Ms. Foster's son, J. Gregory Foster, a defendant below and appellee herein, and Ms. Monk will equally divide any personal items and money remaining after payment of the funeral expenses. Accordingly, we reverse the judgment of the circuit court.

## I.

## FACTS

The facts of this case are essentially undisputed. On March 23, 1994, Ms. Foster died owning a house and nearly 400 acres of land in Mercer County along with certain personal property. A holographic will purporting to be the last will and testament of Ms. Foster was offered for probate. The will states, in pertinent part:

"I—Evelyn Foster—being of sound Mind + Body—do hereby declare—In the event of my death—I herby [sic] will the farm—house + contents to go to Judy Foster Monk—any Monies shall be equally divided—after the funeral Expenses—between Greg Foster + Judy Foster Monk—also I do herby [sic] request that the Farm *not be sold!* Any personal items shall be equally divided—

"Sincerely—

"Evelyn Foster

\*    \*    \*    \*    \*    \*

"If you have any doubt about this—Contact Charlie Smith[.]" [1] (Emphasis in original).

*See* Appendix.

Following Ms. Foster's death, J. Gregory Foster was named administrator C.T.A. of the estate. He filed this action seeking declaratory relief and requesting the circuit court to construe the meaning of the will. Ms. Foster's two children and certain other witnesses were called to testify at trial, but all witnesses were unable to ascertain Ms. Foster's intentions to distribute her property. After hearing the evidence, the circuit court determined the will was ambiguous and therefore invalid.[2]

The sole issue on appeal is whether it is possible to put a meaning upon the language used in the will. In all other respects, the instrument meets the requirements necessary for a valid holographic will. *See In re*

---

1. At trial, Mr. Smith could not shed any light on the meaning of the instrument because he never had seen the will before and could not remember discussing the will with Ms. Foster.

2. At the conclusion of the trial, the circuit judge stated:
   "I find the will to be ambiguous and unclear. I say that for a couple of reasons, because I can't determine what it means for example the way it is written, farm, house and contents. What does she mean by personal items. There is no way for the court to be able to carry this out, because I cannot tell and I so find that I cannot determine from the will, itself, what her intentions were. So, it is the further finding of the court that the will of Evelyn Foster, dated September 12, 1991, is ambiguous and confusing and incapable of interpretation and the court declares the will null and void."

*Estate of Teubert,* 171 W.Va. 226, 298 S.E.2d 456 (1982).[3] *See also* W.Va.Code, 41–1–3 (1923),[4] 20 Michie's Jurisprudence *Wills* § 42 (1993).

## II.

## DISCUSSION

### A. *Standard of Review*

In our review of this case, we begin by noting that no special deference is accorded the judgment of the circuit court because its conclusion that the will in question was invalid due to uncertainty was purely a legal conclusion. In Syllabus Point 1 of *Burks v. McNeel,* 164 W.Va. 654, 264 S.E.2d 651 (1980), this Court held:

> "In reviewing the judgment of a lower court this Court does not accord special weight to the lower court's conclusions of law, and will reverse the judgment below when it is based on an incorrect conclusion of law."

Accordingly, we conduct a *de novo* review in determining whether it is possible to attach meaning to the language used in Ms. Foster's will. *See generally, Farley v. Sartin and Lee Sartin Trucking Co., Inc.,* 195 W.Va. 671, 466 S.E.2d 522 (1995) (questions of law reviewed *de novo* ); *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995).

### B. *Validity of the Will*

The appellant contends that her mother's holographic will is legible, coherent, and capable of interpretation.[5] She asserts the real estate and house were clearly devised to her along with the contents of the house. Furthermore, in the appraisal submitted by the appellee, a distinction was able to be made between personal property and household contents. Finally, the monetary assets of the estate were likewise clearly identifiable.

The appellee argues that his mother only devised a "farm-house + contents" to his sister and the will leaves open the question of how the acreage surrounding the house should be distributed except for the provision that it should not be sold. He contends a differentiation should be made between the farmhouse and the farmland. The appellee also asserts that should this Court hold that the will devised the farm and house to the appellant, our decision would have the effect of nearly disinheriting him because the farm is the major asset of the estate. He argues that the language of the will is not strong enough to imply that his mother's intention was to disinherit him. *See generally, Young v. Lewis,* 138 W.Va. 425, 76 S.E.2d 276 (1953).

In analyzing the parties' contentions, we must bear in mind two points of law. First, "[t]he law favors testacy over intestacy." Syl. pt. 8, *Teubert, supra.* Second, when at all possible, an attempt should be made to ascertain the meaning of a will so that it may be put into effect. In Syllabus Point 7 of *Teubert, supra,* we held:

> "The modern tendency is not to hold a will void for uncertainty unless it is absolutely impossible to put a meaning upon it. The duty of the court is to put a fair meaning on the terms used and not, as it is sometimes put, to repose on the easy pillow of saying that the whole is void for uncertainty."

---

**3.** In Syllabus Point 1 of *Teubert,* this Court recognized three requirements for a valid holographic will: "W.Va.Code, 41–1–3, provides that holographic wills are valid in this State if they are wholly in the handwriting of the testator and signed. The third and final requirement for a valid holographic will in our jurisdiction is that the writing must evidence a testamentary intent."

**4.** W.Va.Code, 41–1–3, states:
"No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, and of each other, but no form of attestation shall be necessary."

**5.** *See* Appendix for a copy of the will.

■ As a general rule, a devise of a "farm" includes the parcel of land used for farming purposes or incidental to the operation of a farm, along with any noncontiguous parcels owned by the testator that were used for farming. *See* 80 Am.Jur.2d *Wills* § 1245 (1975).

■ In this particular case, however, there is no dispute as to what constitutes the "farm." The appellee's contention that the will is ambiguous rests not on the language used in the will, but on the will's punctuation. He urges this Court to read the dash[6] used between words "farm" and "house" as a hyphen[7] that links the two words into one. This construction would have the effect of conveying unto the appellant only the "farmhouse" and leaves the question of whom should receive the "farm" unanswered. Such interpretation violates the presumption against intestacy as to the whole or any part of the estate. *See Teubert, supra.* *See also* 80 Am.Jur.2d *Wills* § 1175 at 287 ("[w]here a will has been executed, the reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption of an intention to die intestate as to any part of his estate when the words used by the testator will clearly carry the whole"). (Footnotes omitted).

■ In ascertaining the testator's intentions, a court must consider the will as a whole and not focus upon isolated clauses or sentences. *Hedrick v. Hedrick,* 125 W.Va. 702, 25 S.E.2d 872 (1943); 20 Michie's Jurisprudence *Wills* § 82 (1993). When we examine Ms. Foster's will, it is clear she substituted dashes ("-") in place of commas and addition signs ("+") in place of the word "and" throughout the instrument. A letter written by Ms. Foster that was admitted into evidence demonstrates it was her prac-

tice to use dashes in lieu of commas. For instance, a fair interpretation of the opening clause of the will, "I—Evelyn Foster—being of sound Mind + Body—do herby [*sic*] declare" would be "I, Evelyn Foster, being of sound Mind and Body, do herby [*sic*] declare[.]" Similarly, a fair and plain reading of the phrase in controversy, "[i]n the event of my death—I herby [*sic*] will the farm—house + contents to go to Judy Foster Monk," is "[i]n the event of my death, I herby [*sic*] will the farm, house and contents to go to Judy Foster Monk[.]"

■ Finally, the appellee's contention that the above conclusion renders him disinherited is unpersuasive. While he certainly receives a much smaller share of his mother's estate than he would have had she died intestate, he is specifically mentioned in the will. Under the terms of the will, he receives a portion of the estate and is not disinherited.[8]

### III.

### CONCLUSION

Based upon the foregoing principles, we hold that the testamentary instrument in this case is a valid holographic will which evidences Ms. Foster's intentions to leave the appellant the four-hundred acre farm, house, and contents of the house. The two children are to equally divide the personal property of their mother and the monetary assets of the estate remaining after payment of the funeral expenses.

For the foregoing reasons, the judgment of the Circuit Court of Mercer County is hereby reversed and the case is remanded for entry of an order consistent with this opinion.

Reversed and remanded.

---

6. The American Heritage Dictionary of the English Language at 336 (1973) defines a "dash" as a mark of punctuation indicating a break in thought.

7. The American Heritage Dictionary, *supra* at 648, defines a "hyphen" as a punctuation mark used to connect the parts of a compound word.

8. In the submitted appraisal of the personal probate property, Ms. Foster's personal effects are valued at $1,500 and the monetary assets are valued at over $22,000.

APPENDIX

9-12-91

I — Evelyn Foster — being of sound Mind + Body — do herby declare — In the event of my death — I herby will the farm — house + Contents To go to Judy Foster Mant — any Monies Shall be equally divided — after the funeral Expenses — between Greg Foster + Judy Foster Mant — also I do hereby request That the Farm not be sold. Any personal items shall be equally divided —

Sincerely —
Evelyn Foster

God Bless Everyone and I Love You —

Give Something of mine to Warren, the Anne + Heath

Love you —

If you have any doubt about this — Contact Charlie Smith

Please Note — Any monies owed from Jayne Foster — Should be Included in my Estate —