507 S.E.2d 708

**CHARLESTON NATIONAL BANK, a National Banking Association, as Executor of the Estate of Constance Woods Ellison, Appellee,**

v.

**THRU THE BIBLE RADIO NETWORK, et al., Defendants Below, Appellees,**

**Pamela Budde, Frank E. Gilbert, Gordon Gilbert, Gordon Gilbert as Executor of the Estate of Wiley Bowley, Jr., William W. Gilbert, Jr., Herbert Ray Gwinn, Rebecca J. Rodgers Pulliam as Executor of the estate of Jack Slater and Frederick Slater, Defendants Below, Appellants.**

No. 24969.

Supreme Court of Appeals of West Virginia.

Submitted June 3, 1998.

Decided July 15, 1998.

G. Thomas Battle, Esq., Spilman, Thomas & Battle, Charleston, West Virginia, Attorney for Charleston National Bank.

Milton T. Herndon, Esq., John F. Hussell, IV, Esq., Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Charleston, West Virginia, Attorneys for Thru the Bible Radio Network.

Thomas G. Freeman, II, Esq., Gretchen M. Callas, Esq., Keren M. Rexing, Esq., Jackson & Kelly, Charleston, West Virginia, Attorneys for Pamela Budde.

Richard M. Francis, Esq., Bowles Rice McDavid Graff & Love, Charleston, West Virginia, Attorney for Rotary Foundation.

PER CURIAM:[1]

This is an appeal by the heirs (hereinafter "Appellants") of Mrs. Constance Woods Ellison from an order of the Circuit Court of Summers County finding that the decedent's holographic will was valid and that the will properly devised Mrs. Ellison's property to Thru the Bible Radio Network, the Appellee (hereinafter "Appellee" or "Thru the Bible"). The Appellants contend that the lower court erred in ruling that the decedent's will was a valid holographic will. The Appellants also maintain that the will should not have been admitted to probate because certain notations were not signed by the decedent. We affirm the decision of the lower court.

I.

On August 6, 1975, Mrs. Constance Woods Ellison[2] wrote holographic will naming her niece, Kathleen Dunn Barnes, as the residual beneficiary of the estate. Mrs. Ellison subsequently made alterations to that holographic will on two occasions in 1978. In a handwritten entry[3] dated August 12, 1978, Mrs. Ellison wrote: "The sum of 5,000 (Five Thousand Dollars) is to be paid to Dr. J. Vernon McGee, Bible Teacher at Pasadena, California." On September 5, 1978, Mrs. Ellison drew a series of X's through the niece's name and wrote: "Dr. J. Vernon McGee and his radio ministery (sic)." On the margin, Mrs. Ellison wrote:: "9–5–78 Residue of Estate to Dr. J. Vernon McGee, Bible Teacher." In addition to the handwritten material, printed material was stapled to the will below Mrs. Ellison's signature, reading as follows: "Thru the Bible Radio, Box 100, Arroyo Annex, Pasadena, California 91109."[4]

Mrs. Ellison died in 1991, and Charleston National Bank (hereinafter "Bank") served as the executor of Mrs. Ellison's estate. In

1993, the Bank brought an action to construe Mrs. Ellison's will, and by order dated June 26, 1995, the lower court ruled that the will could be considered a valid holographic will by striking the printed material from the will.

By order dated July 2, 1997, the lower court found that Thru the Bible was the will's residuary beneficiary and awarded the Dr. J. Vernon McGee $5000 monetary bequest to Thru the Bible. The Appellants appeal that determination, contending that the will was invalid since it was not wholly in Mrs. Ellison's handwriting and contained portions unsigned by Mrs. Ellison.

II.

■ Our analysis is twofold: we must first determine whether the lower court was correct in ruling the will valid and subsequently evaluate the lower court's interpretation of the will. In syllabus point four of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), we explained our standard of review as follows: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*"

A. Validity of Mrs. Ellison's Holographic Will

■ The Appellants first contend that Mrs. Ellison's will does not qualify as a valid holographic will since it contains printed material in addition to Mrs. Ellison's handwritten material. Thru the Bible maintains that Mrs. Ellison's inclusion of the printed material, essentially a label identifying the address of Thru the Bible Radio, was an after-

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. Mrs. Ellison's husband and niece predeceased her, and she had no children. Dr. J. Vernon McGee of Thru the Bible Radio Network also predeceased Mrs. Ellison.

3. All handwriting contained in the will was determined to be that of Mrs. Ellison, and the

authenticity of that handwriting has not been contested.

4. Thru the Bible Radio Network is a California non-profit corporation based in Pasadena, California. Dr. J. Vernon McGee founded the network for the purpose of broadcasting thirty-minute Bible study lectures. Dr. McGee's voice is the only voice broadcasted on the taped lectures.

thought and was not material to the intent of the will.

 In syllabus point one of *In re Estate of Teubert,* 171 W.Va. 226, 298 S.E.2d 456 (1982), we recognized three requirements for a valid holographic will: "*W.Va.Code, 41-1-3,* provides that holographic wills are valid in this State if they are wholly in the handwriting of the testator and signed. The third and final requirement for a valid holographic will in our jurisdiction is that the writing must evidence a testamentary intent."[5] We have also expressed, however, that "[w]here a holographic will contains words not in the handwriting of the testator, such words may be stricken if the remaining portions of the will constitute a valid holographic will." Syl. Pt. 2, *Teubert,* 171 W.Va. at 227, 298 S.E.2d at 457. As expressed in the *Teubert* opinion, "[u]nder the surplusage theory, nonhandwritten material in a holographic will may be stricken with the remainder of the instrument being admitted to probate if the remaining provisions make sense standing alone." *Id.* at 229, 298 S.E.2d at 459.

 The lower court correctly resolved the validity issue by application of syllabus point two of *Teubert.* The court excised[6] the printed material and found that the remaining portions of the will, wholly in the handwriting of the testator, signed,[7] and evidencing testamentary intent, were valid. As the Teubert court concluded, "[i]t is clear that the typewritten words are unnecessary to the meaning of the instrument and that the remaining provisions would make sense standing alone." 171 W.Va. at 230, 298 S.E.2d at 460. The typed portion simply provides an address for a party named in the will; moreover, that address was already partially provided in the will. We agree with the conclusion that Mrs. Ellison's will is valid and affirm that determination.

### B. Interpretation of Mrs. Ellison's Holographic Will

 The Appellants also assign error to the lower court's ruling that Mrs. Ellison

5. West Virginia Code § 41-1-3 (1982) provides:

> No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, and of each other, but no form of attestation shall be necessary.

6. The Appellants contend that the lower court acted inconsistently by finding in its first order that the printed material could be stricken from the will as surplusage, rendering it valid, and then subsequently referencing the printed material in opining that the residuary gift and the monetary bequest were valid and enforceable gifts to Thru the Bible Radio. The lower court found:

> The language used in the Will of Constance Woods Ellison (the Will) evidences that the gifts in question were intended to inure to the benefit of Thru the Bible Radio. The testatrix' intent to name Thru the Bible Radio as the residuary beneficiary is established by her reference to the "radio ministery (sic)" in the residuary bequest and the attachment of the address of Thru the Bible Radio to the Will.

The court's reference to the printed address was imprudent, since reliance thereon would render the will invalid; however, we find that the lower court correctly determined that the material could be excised as surplusage, creating a valid will. The court's reference to the printed address was insignificant and does not demonstrate a reliance by the court upon the printed address to determine the meaning of the will. We find that the lower court's ultimate determination was correct. In so ruling, we are cognizant of our de novo review of conclusions of law and our review of the final order and ultimate disposition under an abuse of discretion standard, as referenced above.

7. The Appellants maintain that the lower court erred in giving effect to the alterations in the will which were not separately signed. West Virginia Code § 41-1-3 "does not address where the testator's signature must appear on the document." *Clark v. Studenwalt,* 187 W.Va. 368, 370, 419 S.E.2d 308, 310 (1992). "The only express requirement with respect to the act of signing is that it be done in such manner as to make it manifest that the name is intended as a signature." *Black v. Maxwell,* 131 W.Va. 247, 255, 46 S.E.2d 804, 809 (1948) (citing *LaRue v. Lee,* 63 W.Va. 388, 60 S.E. 388 [1908]). In *LaRue,* we explained that "new portions written into [a holographic] will, by the same hand, to take the place of erasures, or new portions otherwise written therein, by the same hand ... do not in any sense invalidate the will or affect is finality...." 63 W.Va. at 391, 60 S.E. at 390.

intended the $5000 residuary bequest to Dr. McGee as a gift to Thru the Bible Radio. The handwritten bequest indicates "Dr. J. Vernon McGee and his Radio Ministery (sic)." Thru the Bible maintains that Dr. McGee and Thru the Bible Radio are used synonymously and that subsequent to Dr. McGee's death, Thru the Bible would remain as a recipient of the bequest.

In analyzing the parties' contentions, we recognize that "[t]he law favors testacy over intestacy." Syl. pt. 8, in part, *Teubert*, 171 W.Va. at 228, 298 S.E.2d at 458. We also acknowledge that "when at all possible, an attempt should be made to ascertain the meaning of a will so that it may be put into effect." *Foster v. Foster*, 196 W.Va. 341, 472 S.E.2d 678 (1996). In syllabus point seven of *Teubert*, we held:

> The modern tendency is not to hold a will void for uncertainty unless it is absolutely impossible to put a meaning upon it. The duty of the court is to put a fair meaning on the terms used and not, as it is sometimes put, to repose on the easy pillow of saying that the whole is void for uncertainty.

"In ascertaining the testator's intentions, a court must consider the will as a whole and not focus upon isolated clauses or sentences." *Foster*, 196 W.Va. at 344, 472 S.E.2d at 681 (citing *Hedrick v. Hedrick*, 125 W.Va. 702, 25 S.E.2d 872 (1943)).

As we recognized in *Bank of Raleigh v. Thompson*, 177 W.Va. 162, 351 S.E.2d 75 (1986), "[t]his Court has further strengthened that principle by repeatedly refusing to construe a will based on speculation and conjecture." 177 W.Va. at 165, 351 S.E.2d at 78 (citing *Farmers & Merchants Bank v. Farmers & Merchants Bank*, 158 W.Va. 1012, 1018, 216 S.E.2d 769, 773 (1975)).

In confirming the intention of the testator, we have explained that the "the intention of the testator must be judged exclusively by the words of the will, with legal presumptions and rules of construction resorted to only when the language of the testamentary instrument affords no satisfactory clue to the real intention of the testator." *Id.* (citing *Farmers & Merchants Bank*, 158 W.Va. at

1016, 216 S.E.2d at 772). "[I]n doing so, we must give effect to the true meaning of the testator's words rather than conjectural significance of such language." *Id.*

Regarding the specific language utilized in a will, we stated as follows in syllabus point three, in part, of *Transamerica Occidental Life Insurance Co. v. Burke*, 179 W.Va. 331, 368 S.E.2d 301 (1988):

> If a will was drafted by one who is not a lawyer, a court will be more inclined to assume that the will was written in the language of the lay person and will be more inclined to give effect to the language of the will in accordance with the subjective sense employed by the testator or testatrix, and not according to the technical meaning of the language.

In syllabus point three of *Teubert*, we expressed: "Technical words are not necessary in making testamentary disposition of property; any language which clearly indicates the testator's intention to dispose of his property to certain persons, either named or ascertainable, is sufficient.' Syllabus Point 1, *Runyon v. Mills*, 86 W.Va. 388, 103 S.E. 112 (1920)."

" 'Wherever possible to bring into operation a testator's intention, a court will give such construction to a will as to bring into effect every word or part thereof and such construction will be made as to avoid the creation of an intestacy.' *In Re Conley*, 122 W.Va. 559, 562 [12 S.E.2d 49, 51 (1940) ]." Syl. pt. 3, *Rastle v. Gamsjager*, 151 W.Va. 499, 153 S.E.2d 403 (1967). "The paramount rule in construing a will is that the intention of the testator controls and must be given effect, unless that intention violates some positive rule of law or public policy." Syl. Pt. 4, *Weiss v. Soto*, 142 W.Va. 783, 98 S.E.2d 727 (1957). "The cardinal rule in the construction of testamentary instruments is that a [177 W.Va. at 163] court should give effect to the intent of the testator." Syl. pt. 1, *Reedy v. Propst*, 169 W.Va. 473, 288 S.E.2d 526 (1982).

Mrs. Ellison drafted the original portions of her holographic will on August 6, 1975. She thereafter altered the provisions of the will on August 12, 1978, and September 5,

1978. The first alteration expressly provided the "sum of $5,000 to Dr. J. Vernon McGee, Bible Teacher at Pasadena, California." The second alteration changed the residuary beneficiary from Mrs. Ellison's niece to "Dr. J. Vernon McGee and his Radio Ministery (sic)," with a specific margin notation: "9–5–'78 Residue of Estate to Dr. J. Vernon McGee, Bible Teacher." We find no difficulty interpreting Mrs. Ellison's intent. While technical discourse concerning a will could potentially extend infinitely, the intention of the testator, if ascertainable in a valid will, must govern. We find that the lower court was correct in finding Mrs. Ellison's will valid and in giving effect to her manifest intentions, and we therefore affirm.

Affirmed.

McCUSKEY, J., deeming himself disqualified, did not participate in the decision in this case.

JAMES J. ROWE, Judge, sitting by temporary assignment.