619 S.E.2d 226

Albert E. **RUBLE**, Administrator C.T.A. of the Estate of Mary Alverta Green, Petitioner Below, Appellee

v.

Albert E. **RUBLE**, Betty Ruble, Jacob Mullett, Jeremy Potter, Mark Cappillini, Brenda Cappillini, Steven Brannon, Christine Brannon, Robert Declerico, and Philip Richel c/o Herod Funeral Home, Maude Copeland, Donald Cope-land, Kathryn Evans, Betty Lou Green, James Green, Mary M. Bishop, Raymond Abernathy, Mary Margaret Sullivan, Martha Lancaster, Inez Deeley, and All Unknown Heirs of the Estate of Mary Alverta Green, Respondent Below, Appellants.

No. 32506.

Supreme Court of Appeals of West Virginia.

Submitted June 8, 2005.

Decided July 6, 2005.

Dissenting Opinion of Justice Starcher July 13, 2005.

William L. Pennington, Morgantown, for Appellee.

James W. Courrier, Jr., Keyser, for Appellants.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Monongalia County entered May 7, 2004. In that order, the circuit court held that the residuary clause of a holographic will [1] was valid and that the residue of the decedent's estate was to be distributed to the appellees and petitioners below, Albert and Betty Ruble (hereinafter "the Rubles"), in accordance with the terms of the holographic will.[2] The appellants and respondents below, Donald Copeland and Maude Copeland (hereinafter, "the Copelands"), appeal the order believing that the circuit court erred in denying their motion for a proper expert handwriting analysis of the decedent's will. After reviewing the facts of the case, the issues presented, and the relevant statutory and case law, this Court reverses the decision of the circuit court.

## I.

### FACTS

On September 15, 1999, Mary Alverta Green died in Monongalia County, West Virginia. On October 18, 1999, Albert E. Ruble was appointed Administrator C.T.A. of the estate of Ms. Green. On that same day, Mr. Ruble recorded Ms. Green's September 24,

---

1. A holographic will is a document that is "wholly in the handwriting of the testator," and, unlike non-holographic wills, does not require the attesting signatures of two witnesses to be valid. See W.Va.Code § 41–1–3 (1982); see generally, In re Briggs' Estate, 148 W.Va. 294, 134 S.E.2d 737 (1964).

2. A copy of the will in question is included in its entirety at the end of this opinion.

1994, will in the Office of the Clerk of the County Commission of Monongalia County. Submitted with the will were the affidavits of two witnesses, Jerri S. Walls and Susan M. Johnson, verifying that they were acquainted with Ms. Green during her lifetime and were familiar with her handwriting and signature and that they believed the handwriting and signature on the holographic will was that of Ms. Green. Mr. Ruble and his wife Betty Ruble were also listed as potential beneficiaries with regard to a residuary clause contained in the final paragraph of the will.

On November 16, 2000, Mr. Ruble filed a Petition for Declaratory Judgment asking the circuit court to answer several questions regarding the validity and interpretation of the holographic will. Following a January 19, 2001, hearing, the circuit court entered an order on February 2, 2001, holding that the specific bequests set forth in the holographic will of Ms. Green were valid and immediately payable. Those specific bequests included: $5,000.00 for Jacob Mullett "for personal services during illness;" $5,000.00 to the Herod Funeral Home in Pt. Marion, Pennsylvania, for funeral expenses; and $500.00 each to the decedent's "caring neighbors," Mark Cappellini, Brenda Cappellini, Steve Brannon, Christine Brannon, Jeremy Potter, and Robert DeClerico. Those specific bequests are not the subject of this appeal.

Within that same order, the circuit court ordered Mr. Ruble to serve all ascertainable descendants of Ms. Green, thereby giving them notice of the pending action and giving them an opportunity to take part in a hearing to determine the validity of the residuary clause of Ms. Green's holographic will. On February 2, 2001, an Amended Petition for Declaratory Judgment was filed incorporating the circuit court's ruling and mailed to all ascertainable heirs. On March 8, 2001, a hearing was held to address the validity of the residuary clause.

The issue in question surrounds the last paragraph of Ms. Green's will which provides:

> I appoint the Huntington Bank as my administrator to hold monies not designated in a trust fund to pay all bills at 527 Martin for the heirs. Also in case of dire

need they be alloted (sic) withdrawals as deemed nec. by the Adm.

Written under this paragraph with an arrow clearly connected to the word "heirs" in the above paragraph is the following designation: "Albert & Betty Ruble, 617 Elmina St. Morgantown." The issue before the circuit court was whether the above-quoted paragraph, combined with the designation of the Rubles, was sufficient to dispose of the residue of the estate and, if so, who was to receive the residue.

Maude Copeland and Donald Copeland, cousins of Ms. Green, argued that they along with several other heirs, should have been determined to be the proper distributees of the residue of Ms. Green's estate and therefore should have received such apportionments in accordance with the State's distribution statute. On May 7, 2004, however, the circuit court ruled that the residuary clause in the will was valid as to the Rubles and ordered that the residue of Ms. Green's estate be accordingly distributed to the Rubles. In doing so, the circuit court denied the Copelands' motion for a handwriting analysis by a handwriting expert of Ms. Green's will. The circuit court found that at the time of Ms. Green's death she was not close to any of her extended family, but that she had a close and warm relationship with her neighbors and friends, the Rubles, who provided her with care and companionship. This appeal followed.

## II.

### STANDARD OF REVIEW

■ Since the lower court's ruling was a declaratory judgment regarding the construction of the residuary clause of Ms. Green's will, our review is governed by this Court's holding in Syllabus Point 3 of *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995), wherein we held: "A circuit court's entry of a declaratory judgment is reviewed *de novo.*" We proceed to review this matter to determine whether the lower court erred in its ruling regarding Ms. Green's 1994 will.

## III.

### DISCUSSION

We begin our review in this appeal with the Copelands' argument that the requirements of establishing a holographic will were not met in full in this case because the modified portion of Ms. Green's will was not sufficiently proven to have been in her own handwriting. The Copelands, however, do not dispute that holographic wills are permitted under West Virginia law as long as they are in compliance with the requirements of West Virginia Code § 41–1–3 (1923).[3] Moreover, " '[t]estamentary intent and a written instrument, executed in the manner provided by [W.Va.Code § 41–1–3], existing concurrently, are essential to the creation of a valid will.' Syl. pt. 1, *Black v. Maxwell*, 131 W.Va. 247, 46 S.E.2d 804 (1948)." Syllabus Point 3, *Stevens v. Casdorph*, 203 W.Va. 450, 508 S.E.2d 610 (1998).

The Copelands also agree with the Rubles that it is clear Ms. Green intended to change portions of her one page will by scratching through nine lines located in the middle portion of the will, which was followed by the notation, "Corrected by M. Green 1/19/95." The Copelands, however, point out that there is no such notation of a correction, a date, or Ms. Green's signature or initials, on the section of the will in question where she drew an arrow connecting the Rubles' names to the residuary clause. The Copelands argue that the Rubles were not mentioned anywhere else in the will and clearly are not Ms. Green's statutory heirs. They assert that had Ms. Green intended to leave the balance of her estate to someone other than her natural heirs, she would have specified such in the same manner as she did with the eight specifically named beneficiaries whose bequests were previously ordered to be paid by the circuit court.

The Copelands believe this issue could have been resolved by a handwriting analysis conducted by a handwriting expert which was precluded by the circuit court. They assert that their motion was denied without explanation other than the circuit court's cursory conclusion that such analysis was not necessary because "the handwriting is wholly that of the deceased." They further believe a handwriting analysis was a reasonable request that would have provided the evidence necessary to make a full and informed ruling on the issue of the added notation surrounding Ms. Green's residuary clause.

Conversely, the Rubles contend that the Copelands' argument is presented completely out of context. They say that the action in the Circuit Court of Monongalia County was not a will contest. Instead, it was a declaratory judgment action requested by Attorney Raymond Frere as counsel for Albert E. Ruble in his capacity as the administrator of Ms. Green's estate. Mr. Ruble states that he remained neutral in that action and did not advocate for any particular interpretation of the holographic will. Moreover, the Rubles assert that the circuit court's order reflects an exhaustive analysis of the holographic will including consideration of the legal principles governing the validity and interpretation of holographic wills in the State of West Virginia.

The Rubles also maintain that the circuit court correctly denied the Copelands' motion for a handwriting analysis of Ms. Green's will. The Rubles say the Copelands only dispute the one line at the bottom of the will and admit that the remainder of the will was written by Ms. Green. Thus, the Rubles contend that the circuit judge, sitting as the trier of fact, obviously looked at the disputed line of handwriting, made his own comparison, and made an appropriate final determination of fact himself that the handwriting was that of Ms. Green.

After fully reviewing the evidence, we believe that the circuit court erred in

---

3. W.Va.Code § 41–1–3, provides:

    No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, and of each other, but no form of attestation shall be necessary.

denying the Copelands' request for an expert handwriting analysis. Clearly, as we stated in Syllabus Point 8 of *In re Estate of Teubert*, 171 W.Va. 226, 298 S.E.2d 456 (1982), "[t]he law favors testacy over intestacy." Likewise, we have consistently held that decisions involving the construction of a will always begin with the recognition that: "The paramount principle in construing or giving effect to a will is that the intention of the testator prevails, unless it is contrary to some positive rule of law or principle of public policy." Syllabus Point 1, *Farmers and Merchants Bank v. Farmers and Merchants Bank*, 158 W.Va. 1012, 216 S.E.2d 769 (1975); *see also* Syllabus Point 4, *Weiss v. Soto*, 142 W.Va. 783, 98 S.E.2d 727 (1957); *In re Conley*, 122 W.Va. 559, 561, 12 S.E.2d 49, 50 (1940).

In *Hobbs v. Brenneman*, 94 W.Va. 320, 323, 118 S.E. 546, 549 (1923), we described the role of the judiciary in ascertaining the intention of the testator as follows:

> When the intention is ascertained from an examination of all its parts the problem is solved. The interpretation of a will is simply a judicial determination of what the testator intended; and the rules of interpretation and construction for that purpose formulated by the courts in the evolution of jurisprudence through the centuries are founded on reason and practical experience. It is wise to follow them, bearing in mind always that the intention is the guiding star, and when that is clear from a study of the will in its entirety, any arbitrary rule, however ancient and sacrosanct, applicable to any of its parts, must yield to the clear intention.

■■■ Furthermore, in Syllabus Point 7 of *Weiss v. Soto*, 142 W.Va. 783, 98 S.E.2d 727 (1957), we held that: "In construing a will the intention must be ascertained from the words used by the testator, considered in light of the language of the entire will and the circumstances surrounding the testator when he made his will." We have explained that: " 'Where a will is made it is presumed that the testator intended to dispose of his whole estate, and such presumption should prevail unless the contrary shall plainly appear.' Syl. Pt. 4, *Rastle v. Gamsjager*, 151 W.Va. 499, 153 S.E.2d 403 (1967)." Syllabus

Point 5, *Painter v. Coleman*, 211 W.Va. 451, 566 S.E.2d 588 (2002). Moreover, "Where words are used in a will in a context which renders them doubtful or meaningless, they may be substituted by other words, if such substitution will carry into operation the real intention of the testator as expressed in the will, considered as a whole and read in the light of the attending circumstances." Syllabus Point 2, *In re Conley*, 122 W.Va. 559, 12 S.E.2d 49 (1940).

■■■ More recently, in Syllabus Point 6, *Painter v. Coleman*, 211 W.Va. 451, 566 S.E.2d 588 (2002), this Court wrote that, "[i]n construing a will, effect must be given to every word of the will, if any sensible meaning can be assigned to it not inconsistent with the general intention of the whole will taken together. Words are not to be changed or rejected unless they manifestly conflict with the plain intention of the testator, or unless they are absurd, unintelligible or unmeaning, for want of any subject to which they can be applied." In Syllabus Point 2 of *Charleston Nat. Bank v. Thru the Bible Radio Network*, 203 W.Va. 345, 507 S.E.2d 708 (1998), we also explained: " 'W.Va.Code, 41-1-3, provides that holographic wills are valid in this State if they are wholly in the handwriting of the testator and signed. The third and final requirement for a valid holographic will in our jurisdiction is that the writing must evidence a testamentary intent.' Syl. pt. 1, *In re Estate of Teubert*, 171 W.Va. 226, 298 S.E.2d 456 (1982)." In addition, in Syllabus Point 3 of *Charleston Nat. Bank*, we provided that: " 'Where a holographic will contains words not in the handwriting of the testator, such words may be stricken if the remaining portions of the will constitute a valid holographic will.' Syl. Pt. 2, *In re Estate of Teubert*, 171 W.Va. 226, 298 S.E.2d 456 (1982)."

In this case, neither party to this action contests the validity of Ms. Green's holographic will. The controversy centers completely around the final paragraph of Ms. Green's will which contains the residuary clause. Within that clause the word "heirs" is connected by an arrow to the notation "Albert & Betty Ruble, 617 Elmina St. Morgantown." The issue before the circuit court

was whether the above-quoted paragraph combined with the designation of the Rubles, was sufficient to dispose of the residue of Ms. Green's estate and, if so, who was to receive the residue. The circuit judge wrote that he had "thoroughly read and studied the holographic will ... and carefully examined and compared the handwriting [and that] from its review, the Court does not find it necessary to authorize any form of handwriting analysis." We disagree.

We believe that there was not sufficient evidence before the circuit court to prove that the modification to the bottom of the holographic will was in fact in Ms. Green's handwriting. We have reviewed Ms. Green's will and can only conclude that a proper expert handwriting analysis of the disputed portion was a reasonable request and should have been granted by the circuit court. We have recognized that there are often complications in ascertaining the validity of a will, particularly that of a holographic will, and in light of the fact that the residue of Ms. Green's estate rests entirely on the validity of this one short notation, the Copelands should have been given the opportunity to develop the evidence fully.

Given the specific facts of this case, we believe that the benefit of the opinion of persons who by training and experience are experts in dealing with the use of pen or pencil by another may have led to a more careful and informed result. The Copelands, therefore, should have had the opportunity to present expert testimony to test the genuineness of the notation in question. The testimony from persons of such skill commonly has been used as evidence in assisting courts and juries throughout the world in arriving at correct and accurate conclusions when presented with contested writings. Accordingly, it stands to reason that judges and juries should have the benefit of the opinions of expert witnesses possessing the peculiar skill in the department to which such questions relate. Thus, we are of the opinion that

such testimony was desirable and admissible in this case and that the court below erred in denying the Copelands' motion.

Consequently, we order that this case be sent back to the Circuit Court of Monongalia County for a new hearing surrounding the issue of the residuary clause and the validity of the handwriting of the notation, "Albert & Betty Ruble, 617 Elmina St. Morgantown." We further order that the circuit court allow the Copelands, the Rubles, or both parties, to present evidence from expert witnesses with regard to the handwriting of that specific notation in Ms. Green's will.[4]

▪ We also remind the circuit court and the parties to this action that our declaratory judgment act provides that, " '[w]hen a proceeding under this article involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending.' W.Va. Code § 55-13-9 (1941)." Syllabus Point 15, *Mountain Lodge Ass'n v. Crum & Forster Indem. Co.*, 210 W.Va. 536, 558 S.E.2d 336 (2001). Moreover, in Syllabus Point 16 of *Mountain Lodge Ass'n v. Crum & Forster Indem. Co.*, 210 W.Va. 536, 558 S.E.2d 336 (2001), we held that,

> West Virginia Code § 55-13-9 and Rules 38, 39 and 57 of the Rules of Civil Procedure, read and considered together, operate to guarantee that any issue triable by a jury as a matter of right in other civil actions cognizable by the circuit courts shall, upon timely demand in a declaratory judgment proceeding, be tried to a jury. As to other issues, Rule 39 of the Rules of Civil Procedure expressly authorizes trial by the court, with or without an advisory jury.

Thus, we point out in consideration of the foregoing, that if either party desires a jury trial upon the rehearing of the issues surrounding Ms. Green's will, we believe that

---

**4.** The Copelands asked the circuit court to order that a handwriting expert be paid for in advance out of the funds of Ms. Green's estate. This Court is concerned that such request is premature and does not specifically order such a result with this opinion, and leaves such a determina-

tion to the circuit court, including a determination by the circuit court in its sound discretion as to whether expert witness fees can be imposed on the estate post verdict or taxed as costs against the losing party.

such a request is within well-settled law and a jury trial should be accorded upon the request of any party.[5]

## IV.

## CONCLUSION

For the reasons set forth above, the May 7, 2004, final order of the Circuit Court of Monongalia County is reversed. We also remand the matter to the Circuit Court of Monongalia County for further proceedings consistent with this opinion.

*Reversed and Remanded With Directions.*

Justice STARCHER dissents and files a dissenting opinion.

---

**5.** The Copelands also contended that the circuit court erred in its interpretation of the word "heirs" contained in Ms. Green's will. Since we have ordered a new hearing on Ms. Green's will, we believe it unnecessary to consider this issue. We note, however, that in Syllabus Point 8 of *Weiss v. Soto*, 142 W.Va. 783, 98 S.E.2d 727 (1957), we held that, "[i]n the construction of a will technical words are presumed to have been used in a technical sense and should ordinarily be given their strict meaning; but this rule is not absolute and when it appears from the context that another meaning was intended such words will not be applied in their technical sense."

BOOK 98 PAGE 480     *Sept. 24, 1994*

*"Last Will and Testament"*

*I, Mary Alverta Green, do hereby declare this document to be my will. This day Sat., Sept 24, 1994 being of sound mind,*

*I bequeath my real estate at 527 Martin Morgantown etc as follows:* ~~[scribbled out text]~~ *corrected by m. Green 1/19/95*

*Monetary not designated on CD's to be alloted as follows: $5000.00 to Jacob Mullett 56? Martin St. City (for personal service during illness. $500. to Jeremy Potter (Jacob stepson) $500. ea to my caring neighbors, Mark + Brenda Cappellini, Steve + Christine Brannon, Robert De Clerica. Funeral $5000 IN A CD to Philip Rishel % Herod Funeral Home, Pt. Marion Pa.*

*I appoint the Huntington Bank as my administrator to hold monies not designated in a trust fund to pay all bills at 527 Martin for the Reifla. Also in case of dire need they be alloted withdrawals as deemed nec. by the Adm.*    *Mary Alverta Green*

*↳ Albert + Betty Ruble, 617 Elmina St. Morgantown*

---

STARCHER, J., dissenting:

(Filed July 13, 2005)

The majority reversed this case by setting aside an experienced trial judge's evidentiary ruling, when the judge was sitting as the trier of the facts. Judge Stone found that a questioned notation in Mary Alverta Green's holographic will leaving the residuary of her estate to "Albert & Betty Ruble, 617 Elmina St, Morgantown" was Ms. Green's handwriting and therefore a valid portion of her will. This Court should have given deference to Judge Stone's years of experience as a trial judge, and not have reversed the case.

In this case, the trial judge compared the contested writing with writing to which the parties agreed as being that of Ms. Green.

When a writing that has been admitted or proved to be that of the writer is available, it can be used as a standard of comparison by the trier of fact in making a determination of the authenticity of a contested writing, with or without the use of expert testimony. *Young v. Wheby*, 126 W.Va. 741, 30 S.E.2d 6 (1944). Ultimately, it is the trier of fact that determines the authenticity of disputed handwriting. *W.Va.Code*, 57-2-1 (1981).

The appellants failed to employ a handwriting expert during the proceedings below. The appellants allowed the trial judge to analyze the writing without the aid of an expert. Then, when receiving an adverse ruling, they appealed to this Court.

The majority opinion allows the appellants an undeserved second chance at making their case. Accordingly, I dissent.