# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Tracie Wilson,
**Defendant Below, Petitioner**

**FILED**

**February 11, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 18-0156** (Kanawha County 15-C-1624)

Tonya Parker and Tamra Stewart,
**Plaintiffs Below, Respondents**

## MEMORANDUM DECISION

Petitioner Tracie Wilson, by counsel Shannon M. Bland, appeals the January 24, 2018, order entered in the Circuit Court of Kanawha County that granted summary judgment in favor of Respondents Tonya Parker and Tamra Stewart, who contested the validity of the parties' mother's purported holographic will. Respondents, by counsel Gregory E. Elliott, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties are sisters. Their mother, Joyce M. Johnson ("the decedent"), died on June 27, 2015. Respondent Tonya Parker was thereafter appointed administratrix of the decedent's estate.[1] Subsequent to the appointment, petitioner presented for probate a purported holographic will of the decedent dated June 24, 2015, that left everything the decedent owned to petitioner. The purported holographic will was admitted to probate, petitioner was appointed administratrix of the estate, and Respondent Tonya Parker's prior appointment was revoked.[2]

---

[1] The record reveals that the decedent's prior will left all of her assets to her four children equally. (The fourth child, a son, is not a party to this action.) Apparently, only an unsigned copy of that will was located so, absent the holographic will now at issue, petitioner's estate would pass under the laws of intestacy.

[2] A motion to preserve estate assets that was filed below alleged that the decedent had previously sold the family-owned funeral home for $925,000, and was receiving monthly payments in the amount of $9,105.84. Her yearly income from this sale was $109,296. According to respondents' motion, petitioner's name was on the decedent's checking account beginning in 2007; petitioner received the monthly checks from June through October 2015 (the months immediately following the decedent's death); petitioner opened an "Estate Checking

The purported holographic will, entitled "Last will and testament," stated as follows:

I, Joyce M. Johnson in [sic] sound body and mind this day the 24th of June 2015 leave all my estate to my daughter Tracie D. Wilson[.] I want Tracie Wilson to be my power of attorney.  I do not want any other member of my family to have anything of my estate. This will cancels any previous wills I have.

The purported signature of "Joyce M. Johnson" appeared below the foregoing paragraph as did the signatures of two "witnesses," Lorrie Harmon and Burton Sampson, who were petitioner's friends. The will was allegedly notarized by one Carry D. Grishaber (now Clark) on June 26, 2015. Petitioner and both Ms. Harmon and Mr. Sampson executed affidavits in which they stated that they observed the decedent write the subject will while she was in the hospital, that they returned to the hospital two days later at which time they witnessed her signature, and that the decedent signed the purported will in front of Ms. Grishaber.[3] In her affidavit, petitioner stated that "[t]he will was not signed on June 24, 2015, because no one was sure about a NOTARY being required or not."

On August 26, 2015, respondents filed a complaint in the Circuit Court of Kanawha County against petitioner alleging, inter alia, that the purported holographic will "is a forgery, and fails to satisfy the statutory requirements of a will." Attached to the complaint was the October 1, 2015, report of handwriting expert Vickie L. Willard, who was retained for the purpose of determining whether the signature of "Joyce M. Johnson" at the bottom of the writing was written by the same person who wrote the name "Joyce M. Johnson" in the body of the document. Ms. Willard compared a copy of the purported will with hand-writing exemplars of the decedent that included a series of checks, a note, and other assorted documents.  Ms. Willard opined "that the signature on the Will was not written by the same individual who signed the name Joyce M. Johnson on the exemplars[;]" that "[d]ifferences were observed between the writing of the name Joyce M. Johnsons [sic] in the body of the Will and the signature on the Will[;]" and that "the individual who wrote the name Joyce M. Johnson in the body of the Will is not the same individual who signed the name of Joyce M. Johnson as testator of the Will[.]"

Respondents thereafter filed a motion for summary judgment to which petitioner filed a response and a "counter motion for summary judgment." By order entered on February 2, 2016, the circuit court declined to rule on the parties' respective motions and, instead, held them in abeyance pending discovery.

---

Account" on which she was the only signatory; several pieces of the decedent's real estate were sold for unpaid taxes and had not yet been redeemed; liens for unpaid federal and state income taxes had been filed against the decedent; and credit card, utilities, fees and dues remained unpaid, some dating back to 2012.

[3] In subsequent requests for admission, petitioner asserted her Fifth Amendment right to remain silent as to questions regarding (1) whether she signed the decedent's name at the bottom of the purported will and (2) whether Ms. Harmon and Mr. Sampson, in fact, witnessed the decedent sign the purported will at the hospital.

During discovery, respondents deposed Ms. Grishaber, who testified that she did not notarize the purported will even though her signature and notary stamp appeared on the document; that, although she knew Ms. Harmon, she had not seen her in several years; and that she did not know either petitioner or the other witness, Mr. Sampson. Subsequently, during discovery, petitioner admitted that, in fact, Ms. Grishaber did not go to the hospital and notarize the purported will.

On December 23, 2016, respondents filed a second motion for summary judgment to which they attached the deposition testimony of Ms. Grishaber. They subsequently filed a supplement to the motion to which was attached an affidavit of West Virginia State Trooper S.E. Wolfe, along with the criminal complaints he filed against petitioner and Ms. Harmon in connection with the purported will. According to Trooper Wolfe, Ms. Harmon advised him that neither Ms. Harmon nor the other witness, Mr. Sampson, saw the decedent create or sign the purported will and that, the day after the decedent's death, petitioner forged the decedent's signature on the purported will in Ms. Harmon's presence. Trooper Wolfe's affidavit stated that petitioner enlisted "the aid of three (3) co-conspirators, including a Notary Public, to create, witness, [and] forge the deceased Joyce M. Johnson's signature, and have the fraudulent holographic Will notarized and then probated."[4] Petitioner was charged with one felony count each of financial exploitation of an elderly person, protected person, or incapacitated adult; obtaining money by false pretenses; conspiracy; forgery of public record, certificate, return or attestation of court or officer; and computer fraud.[5]

Petitioner filed a reply to respondents' second motion for summary judgment and also filed her own motion for summary judgment that included a supplemental report by respondents' handwriting expert, Ms. Willard, who had reviewed additional documents containing more recent signatures of the decedent and compared them to the purported will. In a report dated March 24, 2017, Ms. Willard confirmed her prior opinions that "the testator's signature on the Will was not written by the same individual who signed the name Joyce M. Johnson on the specimen [i.e. exemplar] documents[,]" and "that the individual who wrote the name in the text of the Will is not the same individual who signed as testator." Ms. Willard also newly opined that "[t]he name Joyce M. Johnson written in the text of the Will exhibits a high degree of consistency with the specimen signatures. This consistency will support an opinion that the name Joyce M. Johnson written in the body of the text was written by the same individual who wrote the signature on the submitted specimens."

Petitioner also submitted a report by Ronald N. Morris, a forensic document examiner, who, like Ms. Willard, reviewed original known writings of the decedent and compared them to the purported will. Mr. Morris opined that "[t]he writer of the submitted known writing, 'Joyce M. Johnson' (Exhibit K1) in all probability wrote the six lines of writing – the holographic will –

---

[4] By order entered on September 11, 2017, the County Commission of Kanawha County revoked petitioner's appointment as executrix of the decedent's estate and appointed the Sheriff of Kanawha County as curator.

[5] Ms. Harman was also arrested. She was charged with two felonies, the specifics of which are not a part of the appendix record.

at the top of the document described as Exhibit Q1." He further opined that "[t]he writer of the submitted known writing, 'Joyce M. Johnson' (Exhibit K1) in all probability did not write the questioned 'Joyce M. Johnson' signature below the six lines of writing above it."[6]

A summary judgment hearing was conducted on January 8, 2018. By order entered on January 24, 2018, the circuit court granted summary judgment in favor of respondents, concluding that, based upon the evidence presented, the statutory requirements for a valid will were not satisfied. Accordingly, the court ordered that the purported will be removed from probate; that it is null and void; and that the decedent's estate be probated under the laws of intestacy. This appeal followed.

We review the circuit court's summary judgment order de novo. *See* Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Further, in syllabus point two of *Painter*, this Court held that

> "'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

Finally,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Painter*, 192 W.Va. at 190, 451 S.E.2d at 756, syl. pt. 4. This Court will consider petitioner's appeal under this standard.

This Court has stated that "holographic wills are permitted under West Virginia law as long as they are in compliance with the requirements of West Virginia Code § 41-1-3 (1923)." *Ruble v Ruble*, 217 W.Va. 713, 717, 619 S.E.2d 226, 230 (2005). "W.Va. Code, 41-1-3, provides that holographic wills are valid in this State if they are wholly in the handwriting of the testator and signed. The third and final requirement for a valid holographic will in our jurisdiction is that the writing must evidence a testamentary intent." Syl. Pt. 1, *In re Estate of Teubert*, 171 W.Va. 226, 298 S.E.2d 456 (1982). West Virginia Code § 41-1-3 provides as follows:

> No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will

---

[6] Respondents had previously filed a motion objecting to the late disclosure of Mr. Morris as an expert witness. It does not appear that the circuit court ever ruled on this motion.

4

acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, and of each other, but no form of attestation shall be necessary.

On appeal, petitioner argues that the holographic will purportedly created by the decedent comports with these statutory requirements and, in particular, the requirement that the writing be signed by the decedent as testator. Petitioner acknowledges that the signature "Joyce M. Johnson" that appears below the four-sentence testamentary paragraph in the document is undisputedly not that of the decedent. Nonetheless, she contends that West Virginia Code § 41-1-3 "does not address where the testator's signature must appear on the document[,]"*Clark v. Studenwalt,* 187 W.Va. 368, 370, 419 S.E.2d 308, 310 (1992), and that the presence of "Joyce M. Johnson" as written by the decedent in the first sentence satisfies the statutory requirement that the will be "signed by the testator . . . in such manner as to make it manifest that the name is intended as a signature[.]" W.Va. Code § 41-1-3.

In *Clark*, this Court observed that "[t]he importance of a signature on a will is its indication of final testamentary intent. When a document purporting to be testamentary in nature ends without a signature, the question of the instrument's completeness is immediately raised." 187 W.Va. at 370, 419 S.E.2d at 310. In discussing "whether the placement of a testator's name in the first sentence of a holographic instrument fulfilled the signature requirement of West Virginia Code § 41-1-3[,]" *Clark*, 187 W.Va. at 370, 419 S.E.2d at 310, we recognized that the

"vital inquiry . . . [is] whether the act of the writer of the instrument in inserting his name in the first line in the part generally designated as the caption or the exordium, and in not affixing his name at the end or the bottom or on the margin of the paper, satisfied the requirement of the statute that to be a will the written instrument must be signed by the testator in such manner as to make it manifest that the name is intended as a signature."

*Id.* (quoting *Black v. Maxwell*, 131 W.Va. 247, 255, 46 S.E.2d 804, 809 (1948)). We thus held that

[t]he writing of his name by the maker of a holographic instrument in its first line is an equivocal act and, unless it affirmatively appears from the face of the instrument that the writing of his name at that place is intended as his signature, does not satisfy the statutory requirement that a valid will must be signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature.

*Clark*, 187 W.Va. at 368-69, 419 S.E.2d at 308-09, syl. pt. 1 (quoting *Black*, 131 W.Va. at 247-48, 46 S.E.2d at 805, syl. pt. 2).

In *Clark*, we first addressed the facts of *Black*, in which three writings with three separate dates were pasted together and presented for probate. Two of the writings bore, at their conclusion, the signature of the testator. However, the third writing closed without the decedent's signature. *See Clark*, 187 W.Va. at 370, 419 S.E.2d at 310. The latter writing was determined to

5

be invalid as the maker's last will and testament

> "because there was 'nothing to indicate from the face of that instrument that . . . [the decedent] wrote his name in the opening sentence for the purpose of finally adopting, ratifying or authenticating the contents of the paper which follow his name.' . . . The reason for his failure to sign his name at the end of the writing . . . can not [sic] be ascertained or determined. It can rest only on mere speculation; but that there was some reason for his failure to complete the writing by affixing his signature to it is clear beyond question. He may have wished to change or revise and clarify some of the statements in the writing which may be difficult to interpret or understand, or to postpone its completion in its present form by later signing his name at the end. He may have failed to sign it through inadvertence. Whatever it was, something caused him to hesitate and to stop before its final completion. Whatever his reason, he failed to affix his signature at the end of the writing. The evidence of *his intent to use as his signature his name in the first line of the written instrument . . . must appear from the instrument itself*[.]"

*Clark*, 187 W.Va. at 370-71, 419 S.E.2d at 310-11 (quoting *Black*, 131 W.Va. at 260-61, 46 S.E.2d at 811 (emphasis supplied)).

In *Clark*, this Court distinguished the facts before it from those presented in *Black*. In *Clark*, the purported holographic will consisted of a single instrument that included the maker's signature in the exordium but no signature at the end. The maker did not sign the instrument in the presence of witnesses, although he declared it to be his last will and testament in their presence when they attested the will on a subsequent date. This Court determined that there was no evidence suggesting that the maker "forgot to sign the instrument at its closing[;]" that there were "'no blanks or anything that would indicate that it was not . . . [his] last will and testament[;]'" and that the maker "viewed his placement of his signature in the exordium as sufficient to constitute an indication that he intended the document as his last will and testament." *Id.* at 371, 419 S.E.2d at 311 (quoting *Hall v. Brigstocke*, 58 S.E.2d 529, 533 (Va. 1950)). Further, we found that there was no "glaring evidence of incompleteness" in the instrument given that the maker directed the disposition of all of his property and also, immediately following the final sentence of the instrument wherein he appointed his executor, "designated two specific places for attesting signatures." *Clark*, 187 W.Va. at 371, 419 S.E.2d at 311. We viewed the fact that the maker secured

> the two attesting witnesses, although unnecessary for a purely holograph will, as the type of affirmative evidence which demonstrates that [the maker] did in fact intend the . . . instrument to be his last will and testament. Accordingly, the procurement by the testator of attesting witnesses for a holographic instrument fulfills the requirement established in *Black* that a holographic will which does not bear a signature at its closing but does include the maker's name in its opening line must provide some internal evidence that the maker intended the writing of his name, wherever its placement, as his signature.

*Clark*, 187 W.Va. at 371, 419 S.E.2d at 311.

6

Petitioner argues that the holographic instrument written by the decedent in this case is similar to the one upheld in *Clark*. She argues that it is a single written instrument; that it is entitled "Last will and testament;" that it contains no blanks; and that it disposes of all of the decedent's property. Further, she contends, the instrument expressly "cancels all previous wills I have[,]" evidencing the completeness and finality of the decedent's testamentary intent. Additionally, petitioner characterizes the signatures of Ms. Harmon and Mr. Sampson as "witnesses" and the stamp and purported signature of Ms. Grishaber as "notary" as "inappropriate," while acknowledging that the decedent's signature beneath the testamentary paragraph was "not signed" by her.[7] Nonetheless, petitioner argues, "it shouldn't matter as [the decedent's] intent is where the attention should lie." She contends that, under the surplusage theory, these extraneous markings "not in the handwriting of the testator . . . may be stricken if the remaining portions of the will constitute a valid holographic will." Syl. Pt. 3, in part, *Charleston Nat'l Bank v. Thru the Bible Radio Network*, 203 W.Va. 345, 507 S.E.2d 708 (1998) (quoting *Teubert*, 171 W.Va. at 227, 298 S.E.2d at 457, syl. pt. 2). Thus, petitioner argues, if the instrument satisfies the requirements of West Virginia Code § 41-1-3, then the decedent's "intent to be testate should not be negatively affected by markings made upon the document after the fact by someone other than her."

We find no error. This Court is not persuaded that the decedent intended the writing of her name in the first sentence to be her signature. From the outset, petitioner has claimed that the decedent did not sign the will at the time she wrote it because "no one was sure" whether she was required to sign it in the presence of a notary in order for it to be valid. Clearly, there would have been no reason to wait two days for a notary if the decedent, in writing her name in the testamentary paragraph, did so in such manner as to make it manifest that her name was intended as her signature. Indeed, the decedent never signed the instrument and the reason for her failure to do so cannot now be "determined. It can rest only on mere speculation; but that there was some reason for [her] failure to complete the writing by affixing [her] signature to it is clear beyond question. . . . Whatever it was, something caused [her] to hesitate and to stop before its final completion." *Clark*, 187 W.Va. at 371, 419 S.E2d at 311. Thus, the instrument does not comport with the requirements of West Virginia Code § 41-1-3 and is invalid as a holographic will. Accordingly, we affirm the January 24, 2018, summary judgment order that removed the instrument from probate, declared it null and void, and ordered that the decedent's estate be probated under the laws of intestacy.

For the foregoing reasons, we affirm.

---

[7] This Court would be remiss if it did not denounce petitioner's arguments as being, at the very least, audacious mischaracterizations of the evidence. The record reveals that Ms. Harmon informed law enforcement that petitioner forged the decedent's signature on the instrument; that petitioner conspired with Ms. Harmon and Mr. Sampson, who signed the instrument as "witnesses" but who were not, in fact, present when the decedent created or purportedly signed it; that Ms. Harmon and Mr. Sampson executed sworn affidavits that falsely stated that they observed the decedent create the holographic instrument and, subsequently, sign it, in order to support petitioner's efforts to probate the instrument; that Ms. Grishaber did not, in fact, notarize and sign the instrument; and that petitioner was charged with numerous felonies related to her actions.

Affirmed.

**ISSUED:**  February 11, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

8